**Affirmed and Memorandum Opinion filed July 2, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00017-CV

**GREEN DIESEL, LLC AND FUEL STREAMERS, INC, Appellants**

**V.**

**VICNRG, LLC, Appellee**

**On Appeal from the 153rd District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 153-260110-2**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, appellants, Green Diesel, LLC and Fuel Streamers, Inc., appeal the trial court's orders (1) denying their motion to vacate the appointment of a receiver; and (2) fixing the bond of appellee, VicNRG, LLC.[1]

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(2) (West Supp. 2012) (providing for interlocutory appeal from order overruling a motion to vacate an order that appointed a receiver). Appellants concede, as they must, that this is not an appeal from the order appointing the receiver in the first instance under section 51.014(a)(1). *See id.* § 51.014(a)(1) (providing for

We affirm.

## I. BACKGROUND

VicNRG, an energy trader, filed suit against appellants on July 3, 2012, alleging that appellants sold it worthless Renewable Identification Numbers ("RINs"), for which it paid $3,758,750.[2] VicNRG alleged that appellants represented to it that (1) Green Diesel had manufactured biodiesel in a facility located in Houston; (2) Green Diesel had 60,000,000 RINs separated from biodiesel fuel Green Diesel produced at that plant; and (3) the "RINs were genuine and valid," "Green Diesel had good title to them," and "the RINs were marketable."[3] In February 2011, appellants sold approximately 4,225,000 RINs to VicNRG for $3,758,750. Appellants then resold the RINs to third parties, making the same warranties about the RINs. However, according to VicNRG's petition, the biodiesel plant had never functioned and was incapable of manufacturing

interlocutory appeal from order that appointed a receiver). Such an appeal would be untimely. *See* TEX. R. APP. P. 26.1(b) (providing that notice of appeal in an accelerated appeal must be filed within twenty days after judgment or order is signed).

[2] VicNRG also sued several other parties, who are not part of this appeal. VicNRG splits defendants into two groups. The first group is the "Seller Defendants," which includes: Phillip J. Rivkin, Fuelstreamers Group, Greendiesel Trading, S.A., Petroethanol, LLC, Petro Constructors Pvt., Ltd., Petro Constructors, LLC, and Sterling Energy, LLC. The second group is the "Broker Defendants," which includes: FCStone, LLC, and FCStone Trading, LLC.

[3] According to VicNRG's petition, biodiesel is a type of fuel that is generated from vegetable oil or animal fats and is considered a renewal source of energy, as distinguished from petroleum-based diesel. VicNRG's petition further explained:

> A RIN is a numeric code that corresponds to a volume of renewable fuel produced or imported into the U.S. It remains with the fuel as it moves through the fuel distribution system. Once the renewable fuel is blended with motor vehicle fuel, among other methods, the RIN can be separated, and it can be used for regulatory compliance, held for future compliance, or traded. Thus, a marketplace exists in which parties in the fuel market who are required to incorporate renewable fuel in gasoline or diesel may purchase separated RINs when they lack the ability to meet annual "renewable volume obligations" imposed by the federal government. RIN transactions are reported and managed under the EPA's online "Moderated Transaction System." (EMTS).

biodiesel fuel that would permit lawful generation of RINs associated with that fuel. On April 30, 2012, the EPA issued a notice declaring the RINs invalid. As a result of the EPA notice, appellants began diverting assets. Therefore, in addition to its suit for damages, VicNRG also sought appointment of a receiver to preserve appellants' assets for any potential judgment.[4]

The trial court had a hearing on VicNRG's request for a receiver on July 23, 2012, prior to appellants' answer date. Appellants did not appear at the hearing, and the trial court signed its order appointing David A. Fettner receiver that same day.[5] Though the order authorized Fettner to take control of property and ordered a receiver's bond of $100,000, it did not order or fix an applicant's bond.

Four days later, on July 27, 2012, appellants filed a motion to vacate the appointment of a receiver[6] urging, *inter alia*, that the trial court erred in appointing a receiver without appellants' having received notice pursuant to Rule 695 of the Texas Rules of Civil Procedure.[7] VicNRG responded to the motion to vacate, contending that appellants had been served on July 9, 2012, with VicNRG's petition and fiat stating that the hearing was set for July 23, 2012. In their reply, appellants urged for the first time that the order appointing receiver was defective

---

[4] VicNRG sought the appointment of a receiver to take possession of the assets of Seller Defendants Phillip J. Rivkin, Fuelstreamers Group, Greendiesel Trading, S.A., Petroethanol, LLC, Petro Constructors Pvt., Ltd., Petro Constructors, LLC, and Sterling Energy, LLC. VicNRG did not seek a receiver to take possession of the assets of Broker Defendants FCStone, LLC or FCStone Trading LLC.

[5] The trial court appointed the receiver to take possession of the assets of Seller Defendants Phillip J. Rivkin, Fuelstreamers Group, Greendiesel Trading, S.A., Petroethanol, LLC, Petro Constructors Pvt., Ltd., Petro Constructors, LLC, and Sterling Energy, LLC.

[6] The record does not contain any indication that the other Seller Defendants filed a motion to vacate.

[7] *See* TEX. R. CIV. P. 695 (requiring that notice of the hearing on the application for appointment of a receiver be provided to the "adverse party by serving notice thereof not less than three days prior to such hearing"). Though appellants originally contended they did not receive notice of that hearing, they do not assign error to that complaint on appeal.

3

for failure to require the applicant, VicNRG, to post a bond.

Meanwhile, on August 29, 2012, Fettner filed a motion to modify the order appointing a receiver, in which he sought to broaden his authority to include the power to open appellants' mail, and a motion for consent to sell property. According to Fettner's motions, appellants took no position on his motions, and the record does not contain any responses to the motions by appellants.

On September 4, 2012, the trial court conducted a hearing on appellants' motion to vacate. The parties directed their arguments almost exclusively to whether Texas Rule of Civil Procedure 695a requires an applicant's bond. As an alternative, VicNRG urged that the trial court was "empowered to order one now and it would be timely." VicNRG offered to adduce testimony from Fettner "regarding matters that are relevant to amount of that bond." Appellants neither objected to the entry of a bond order nor offered any testimony or argument about the amount of that bond. The trial court denied the motion to vacate and "require[d] the applicant [to] post a bond in the same amount as the receiver, which [was] $100,000." The trial court signed separate orders denying appellants' motion to vacate and fixing the applicant's bond.

## II. ANALYSIS

In this interlocutory appeal, appellants challenge in four issues the validity of the order denying their motion to vacate the appointment of a receiver and the order fixing the applicant's bond, which we consolidate into two issues regarding receivership procedure and the applicant's bond.[8]

---

[8] Appellants originally assigned error to the jurisdiction of the Tarrant County district court to enter the order appointing receiver because appellants' principal place of business in Texas is in Harris County. However, it is undisputed that the trial court later granted appellants' request to transfer venue to Harris County. Appellants confirmed during oral argument that they have abandoned that issue. Moreover, we conclude that the trial court had jurisdiction over the

4

## A. Receiver Procedure

In their first and second issues, appellants contend that (1) the trial court erred in not granting the motion to vacate because the order appointing the receiver did not comply with Rule 695a; and (2) the September 4, 2012 order setting an applicant's bond did not cure the deficiency of the original July 23, 2012 order.

**Defective Order Appointing a Receiver**

Texas Rule of Civil Procedure 695a provides the following, in relevant part:

> No receiver shall be appointed with authority to take charge of property until the party applying therefor has filed with the clerk of the court a good and sufficient bond, to be approved by such clerk, payable to the defendant in the amount fixed by the court, conditioned for the payment of all damages and costs in such suit, in case it should be decided that such receiver was wrongfully appointed to take charge of such property.

TEX. R. CIV. P. 695a. The trial court's July 23, 2012 order appointing a receiver did not comply with Rule 695a. Thus, VicNRG concedes, and we agree, that the trial court's July 23, 2012 order was defective. *See Ahmad v. Ahmed*, 199 S.W.3d 573, 575–76 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Curing the Defect**

Notwithstanding the defect in the trial court's original order appointing receiver, VicNRG urges that we affirm because the defect was cured by the court's September 4, 2012 order fixing an applicant's bond under Rule 695a.

Appellants, on the other hand argue that a defective order cannot be cured

---

subject matter of the suit and, thus, had jurisdiction to appoint a receiver pursuant to Section 64.001 of the Texas Civil Practice and Remedies Code 64.001. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a) (West 2008) (providing circumstances under which a court of competent jurisdiction may appoint a receiver); *In re Hereweareagain, Inc.*, 383 S.W.3d 703, 709 & n.9 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (providing that courts have the inherent power to appoint a receiver).

"by a subsequent addendum" because the failure to fix an applicant's bond requires a reversal. Appellants rely on *O'Connor v. O'Connor*, 320 S.W.2d 384, 391 (Tex. Civ. App.—Dallas 1959, writ dism'd). Appellants' reliance on *O'Connor* is misplaced, however, because *O'Connor* is not a "cure" case. Instead, despite the admitted "fruitless" nature of the procedure, the *O'Connor* court reversed for the absence of applicant's bond and remanded the case to the trial court for the purpose of holding a hearing to correct the oversight. *Id.* Not only did the *O'Connor* court never say that the defect could not be cured, it reluctantly remanded the case for just that purpose.

After *O'Connor*, courts, including our own, have encountered circumstances of cure. As outlined below, these cases uniformly hold that the omission of an applicant's bond is a defect that may be rendered moot on appeal by the curative posting of an applicant's bond. Specifically, in *Pfeiffer v. Pfeiffer*, we previously held that, where a trial court erroneously appoints a receiver without an applicant's bond but corrects the error, there is substantial compliance with Rule 695a. 394 S.W.2d 679, 681 (Tex. Civ. App.—Houston 1965, writ dism'd). "Under such circumstances, reversible error is not shown." *Id*; *see also Sclafani v. Sclafani*, 870 S.W.2d 608, 609 n.2 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("We note that while this proceeding was pending in this Court, [appellee] filed an applicant's bond making [appellant's] complaint about the lack of bond moot."); *O & G Carriers, Inc. v. Smith Energy 1986-A P'ship*, 826 S.W.2d 703, 708 (Tex. App.—Houston [1st Dist.] 1992, no writ) (stating that the line of cases holding the failure of an applicant to file a bond requires reversal are distinguishable where the applicant files an applicant's bond after appeal). Like the trial court in *Pfeiffer*, the trial court here ordered a subsequent bond and thereby corrected the error in failing to originally order an applicant's bond under Rule 695a.

In contrast to their briefing, appellants conceded in oral argument that if the trial court had merely interlineated an applicant's bond into the original order appointing a receiver, the order would be Rule 695a-compliant. Thus, it appears that appellants, too, accept that the defect in the original order could be cured. However, the very narrow issue upon which appellants seek to join issue is whether the trial court's error in failing to fix a Rule 695a applicant's bond may be cured *by separate order*.

In their reply brief, appellants urge a distinction between the failure to file a bond and the failure to fix a bond. Appellants do not cite and we have found no authority for making such a distinction in determining whether the defective order (failure to fix) or the defective circumstance (failure to file the bond when the court fixes the sum) may be cured. The purpose of the bond is to ensure that the defendant can be reimbursed for any damages caused by the appointment of the receiver in the event the receiver was wrongfully appointed. *Cont'l Homes Co. v. Hilltown Prop. Owners Ass'n, Inc.*, 529 S.W.2d 293, 295 (Tex. App.—Fort Worth 1975, no writ). We cannot see how that purpose is frustrated by a technical delay in securing the sum. We further conclude that our reference to "substantial compliance" in *Pfeiffer* guides us away from any notion that an order, substantially but not fully compliant, may not be cured. *See Pfeiffer*, 394 S.W.2d at 681. Thus, we hold that the failure of the trial court to fix an applicant's bond may be cured.

**Defect Cured by Separate Order**

At the outset, we note that appellants did not object at the September 4, 2012 hearing to the trial court's signing a separate order. Specifically, appellants did not complain to the trial court that the separate order fixing bond was ineffective or insufficient to protect them. Appellants never brought any complaint to the attention of the trial court that a separate order fixing bond did not address the

7

issue raised by their motion to vacate. In fact, appellants did not raise the absence of an applicant's bond in their original motion to vacate. Instead, they first raised that complaint in their reply to VicNRG's opposition to that motion.

Appellants' failure to complain about the form of the applicant's bond in the September 4, 2012 hearing waives any issue on appeal regarding the trial court's failure to interlineate on the original order instead of signing a new order. *See* TEX. R. APP. P. 33.1(a)(1)(A). Errors in receivership procedure may be waived. *See Fite v. Emtel, Inc.*, No. 01-07-00273-CV, 2008 WL 4427676, at *9 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, pet. denied) (mem. op.); *Loomis Land & Cattle Co. v. Diversified Mortg. Investors*, 533 S.W.2d 420, 423 (Tex. Civ. App.— Tyler 1976, writ ref'd n.r.e.) (holding that failure to post applicants bond was an error waived by appellant's failure to timely appeal).

Moreover, even if appellants had not waived this complaint, we would reject this approach as a slightly varied but legally indistinguishable version of appellants' "no cure" argument. We find no authority to support appellants' single-piece-of-paper argument. The plain language of the rule does not require a single order. Appellants cite no case that holds that Rule 695a required appointment and bond to be within the four corners of a single order. Rather, consistent authority from Texas intermediate appellate courts regarding defects in the receivership procedure compels us to reject appellants' suggested formalistic approach. *See, e.g.*, *Lauraine v. First Nat'l Bank of Whitney*, 204 S.W. 1022, 1025 (Tex. Civ. App.—Galveston 1918. no writ) ("Mere defects in the petition upon which the receiver was appointed would not render the receivership proceedings void.").

Further, appellants' belief in the single-piece-of-paper theory is belied by their failure to respond in opposition to Fettner's motions to broaden authority or

for permission to sell property. If appellants were correct about the "valid initial appointment" procedure, they should likewise urge that the receiver's powers may not be modified by an order "separate from" the bond order. They do not make this argument, likely because it would be unworkable. We hold that the defective order appointing receiver in this cause may be cured by separate order. We overrule appellants' first and second issues.

## B. The Applicant's Bond

In their third issue, appellants argue that the trial court erred by failing to fix a separate bond per defendant subject to the receivership order. And, in their fourth issue, appellants complain that the amount fixed by the trial court for the applicant's bond was "arbitrary" and that they were denied the opportunity to present evidence of potential damages. VicNRG argues that appellants waived these arguments. We agree.

As to appellants' complaint that the trial court failed to fix a separate bond per defendant, appellants did not complain at any time that the order did not fix a bond payable to Green Diesel, LLC and payable to Fuel Streamers, Inc. Specifically, appellants articulated no objection during the September 4, 2012 hearing. At the end of the hearing, the trial court directed VicNRG's counsel to show appellants' counsel the proposed order setting bond before the trial court signed it. Following the hearing, appellants lodged no complaint to the trial court about the form of the order. Also of note is appellants' own motion to vacate, in which appellants complained the order "did *not* include a requirement that the *applicant* post a bond *payable to the* defendant as required by Tex. R. Civ. P. 695a."

The trial court's order fixing bond is made payable "to Defendants." Though the trial court entered an order for applicant's bond that tracked the

9

language of the rule and specifically met appellants' complaint in its motion, appellants now complain that the order did not set "a bond for each defendant subject to [the] receivership" or "a bond [that is] *specific* to the defendants in receivership." Neither of these complaints has ever been presented to the trial court.

Appellants' complaint that the trial court did not give them "an opportunity to present evidence of potential damages," also asks this court to consider a question never presented to the trial court. Appellants contend they have not waived this issue because the bond amount was not at issue at the September 4, 2012 hearing. Appellants are incorrect. Though appellants may complain that they did not realize that the amount of bond would be at issue in the hearing they set on a motion to vacate, they did not articulate that to the trial court or seek a continuance. Appellants should have realized that the amount of bond might be at issue in the hearing. In its response to the motion to vacate, VicNRG offered, as an alternative to vacating the appointment, to post a bond and requested that the trial court to "set the amount of such bond."

During the September 4, 2012 hearing, appellants knew that the amount of bond was an issue because VicNRG offered to call Fettner as a witness to assist in establishing the amount of bond, if the trial court desired. Appellants said nothing. The trial court apparently determined that it did not need any further evidence, having heard a substantial amount at the original hearing on the appointment of the receiver, and ordered bond set at $100,000. Again, appellants sought no continuance to obtain evidence. Appellants filed no motion to increase the bond with evidence or a motion for reconsideration with evidence. In short, appellants' cannot complain of a trial court's denial of "an opportunity to present evidence" where there was never an offer of evidence.

10

Accordingly, appellants never presented a complaint to the trial court that the September 4, 2012 order fixing the applicant's bond was not payable to each defendant, was not payable to a specific defendant, or was entered without the opportunity for appellants to present evidence. *See* TEX. R. APP. P. 33.1. We find nothing in the context of the hearing or the proceedings that relieves appellants of their obligation to place the trial court on notice of specific complaints. We hold that appellants have failed to preserve these complaints for appeal, and overrule their third and fourth issues.

Having overruled all of appellants' issues, we affirm the trial court's judgment.


/s/          Sharon McCally
Justice

Panel consists of Justices Brown, Christopher, and McCally.