James D. O'CONNOR, Appellant,

v.

C. J. O'CONNOR et al., Appellees.

No. 15528.

Court of Civil Appeals of Texas.

Dallas.

Jan. 9, 1959.

Rehearing Denied Feb. 6, 1959.

P. P. Ballowe, James D. O'Connor, per se, Dallas, for appellant.

A. J. Thuss and W. M. Taylor, Jr., Dallas, for appellees.

YOUNG, Justice.

The appeal is from an order appointing a receiver of property in possession of J. D. O'Connor, independent executor; also removing him as such statutory .official. Appellees as plaintiffs filed this suit originally in District Court against the independent executor for an accounting and partition relative to realty jointly owned by the parties hereto, both under the mutual will of their father and mother and as heirs at law. The following antecedent facts and events should first be stated.

In 1952, the parents of C. J. and Arthur O'Connor, plaintiffs, and J. D. O'Connor, defendant, had executed a joint will leaving all their property to the survivor; and upon death of both, to these three named sons to be divided equally; except that, for reasons stated in paragraph three of the instrument, the homeplace, located at 4603 Bryan Street in the City of Dallas, together with another dwelling at the rear thereof known as 1406 Annex Avenue, as well as all furniture and furnishings, should be the separate property of the youngest son James D. O'Connor. The latter was named executor without bond of this joint will of Ellen and T. J. O'Connor, reciting that no action be taken in probate court in the administration of their estate other than the probate of will and return of inventory, appraisement and list of claims. Ellen O'Connor died July 1, 1953, the will being duly probated and J. D. O'Connor qualifying as her executor. On July 15, 1954 the father died, the will again probated with J. D. O'Connor as the duly qualified executor on September 18, 1954.

Defendant's only inventory and appraisement of estate in this record is here quoted: "Now comes Jas. D. O'Connor as executor of the estate of Ellen O'Connor, Deceased. and makes and produces this as an invento-

ry and appraisement to the undersigned appraisers on this the 27 day of November A.D. 1953 of the Estate left by the above named deceased:

### Community Property
#### (Being one-half the full value)

| | |
|---|---|
| Parts of Lots 1 and 2, Block 699–4, Dallas County | $7,000.00 |
| South part of Lots 1 and 2, 60′ X 100′ Bryan Street, Dallas County, Texas | 8,000.00 |
| Lot 7, Block 2033–6 Wycliff Street, Dallas County | 5,000.00 |
| Lot 6, Block 2033–6 Wycliff, Dallas County | 5,000.00 |
| Total | $25,000.00 |

### Community Personal Property
#### (Being one-half the full value)

| | |
|---|---|
| Various items of furniture, furnishings and tools | $1,885.72 |

### Claims Due Estate.

| | |
|---|---|
| One note due and payable on demand dated the year of 1948 signed by J. W. Swatek, et al, secured by a deed of trust by a Second Lien on certain property located in the 8400 Block of Harry Hines Boulevard in the City of Dallas, Texas (being one-half the value of the note) | 2,750.00 |

### Claims Due by Estate.

| | |
|---|---|
| Funeral Expenses of Ellen O'Connor due Chas. F. Weiland Undertaking Company | 1,049.50 |
| City, County and State Taxes | 400.00 |
| Doctor Bills | 75.00 |
| Other current bills | 125.00 |
| Total | $600.00 |

### Separate Personal Expense of Deceased. (Total value)

| | |
|---|---|
| Two Diamond Rings @ $150.00 each | 300.00 |
| Five pieces of costume jewelry | 3.00 |
| Total | $303.00." |

In December 1954 C. J. and Arthur O'Connor filed suit in probate court to set aside the joint will on grounds of mental incapacity of the testators and undue influence, praying also for appointment of receiver along with a full accounting. This contest, upon hearing, was denied in that court and appealed to the instant District Court (the 134th) where it is now untried and pending.

The inventoried realty was revenue bearing by way of rentals, and in April 1958 plaintiff brothers brought this suit, presently for an accounting by defendant executor with respect to his handling of receipts and disbursements since appointment in 1954, and ultimately for partition and division of property in which they owned a two-thirds interest, either under the said joint will or as heirs at law in absence of a will. Grounds for the receivership sought were generally mis-management and feared dissipation of property described in the petition as follows: (1) A two-story

frame house consisting of four apartments and an upstairs apartment in a frame garage building on the rear of said lot, all being known as 4605 and 4607 Bryan Street in the City of Dallas, Dallas County, Texas; (2) A frame house consisting of two apartments and known as 4021 Wycliff Street in said City of Dallas, Texas; and (3) a frame house consisting of two apartments and known as 4025 Wycliff Street in said City of Dallas, Texas; all of the above apartments being entirely and completely furnished with all necessary furniture and equipment.

In summary, plaintiffs charge in sworn pleading that during defendant's possession as executor he had collected approximately the following amount of rental: $350 per month from property known as 4605 and 4607 Bryan Street, and $250 per month from the duplexes known as 4021 and 4025 Wycliff, or a total of around $30,000; further charging that defendant "has never made or offered to make any kind of a report, accounting or settlement with plaintiffs for such income, but on the contrary has refused to make, and still so fails and refuses to make, such an accounting and settlement, to plaintiffs' great damage. * * * that the defendant is and has always been very careless, loose and reckless in all of his business transactions and a free spender, disregarding and failing to use good business judgment and a careful account of monies he receives, and from information they have received, and relying upon such information and the knowledge they have, they allege that defendant has mis-applied said funds on other property and has appropriated the same, or a part thereon, to his own use and benefit. And that therefore said defendant should be ordered to make a full, complete and detailed report of all receipts and expenditures made by him on the above described property". As basis for appointment of a receiver it was alleged "they are afraid that defendant will continue to appropriate such rents and revenues to his own use and will continue to spend and waste such rev-

enues if he is allowed to continue to have the same in his possession and to receive and collect such rents and revenues."

It was further alleged "that defendant, himself and his partner, Mildred Douglas, were indebted to the estates of T. J. and Ellen H. O'Connor in the amount of approximately $5500.00, as evidenced by a Note executed by said defendant and Mildred Douglas, and said note being secured by a Deed of Trust on other property belonging to defendant and Mildred Douglas; that defendant says that said Note has been fully paid by him and the said Mildred Douglas to him as Independent Executor, but that Defendant has failed and refused, and still fails and refuses, to account to plaintiffs for the proceeds of said Note or pay Plaintiffs their proportionate part thereof".

Defendant answered in lengthy pleading; first by a plea to the jurisdiction in that plaintiffs were precluded from forcing a receivership or partition of properties involved in the will contest, still pending in the same District Court; praying that the instant original action be abated or dismissed. Many exceptions were to the same effect; i. e. that plaintiffs were in no position to demand an accounting or settlement of estate until final disposition of such will contest. By way of denial and defense, defendant pled that exclusive jurisdiction was vested in probate court in case of any alleged mis-management of estate; the attempt here to substitute an administration by means of a receiver in face of defendant's prior appointment as independent executor being unauthorized by law, "in effect a collateral attack upon the judgment of a court of competent jurisdiction which they have no right to do."

On June 26, 1958 came on to be heard plaintiffs' application for receivership and accounting; defendant testifying in substance as follows: That other than the homeplace (4603 Bryan) he had collected on the property known as 4605 Bryan a total of $325 per month. On the Wycliff

duplexes, a total of $260 per month; the houses being rented a part of the time, he could not say how much "right now". He stated that the $5,500 note due the estate signed by himself, his law partner Mildred Douglas and one Swatek had been paid, not remembering when; the proceeds going for taxes, funeral bills, a monument; sending C. J. O'Connor a check for $1,600, (earlier advanced by this plaintiff to meet immediate estate expenses) but which check was returned; he, the executor, then spending it "on the property"; that he had given Arthur O'Connor $200; had not rendered an accounting to anyone and didn't think he was required to "until I finally wound up the estate". To the question "you haven't thought that you had any obligation to account for a dime of the money?" defendant answered "no, I don't, not until I settle this estate"; also indicating that he owed plaintiffs nothing "so long as this will contest is pending." The properties were rented furnished, requiring them to be kept by the executor in good repair, the payment of current utilities, insurance, etc.; defendant's record of receipts and disbursements consisting of receipts for rent, cancelled checks and stubs. As to items of expense, defendant testified to having such records, "but it would take a day or two to go through them." He testified to delinquent city and Dallas Independent School District taxes now paying $100 per month on an $800 City tax bill. Indebtedness of the estate at time of the June hearing, he said, were attorney's fees accrued by reason of the will contest, to air-conditioners, stove, refrigerator and taxes. Defendant was questioned as follows: "Q. I mean, have you made all the showing that you want to make today. A. I'll make all the showing you want me to, whatever you ask me to do. If you want me to do it, I will do it. Q. I asked you a couple of months ago to make an accounting on this property and I haven't seen anything yet in the way of an accounting on it. A. I will say to you that I didn't think I owed you the accounting."

Following above hearing the trial court overruled defendant's plea to the jurisdiction insofar as an accounting was prayed; reserved rulings on other pleas to the jurisdiction; ordering defendant executor to make, by July 14, "a full and complete accounting under oath of all property, together with rents, revenues and income from the estates of Ellen O'Connor and T. J. O'Connor since James D. O'Connor qualified as independent executor of such estate"; other relief sought by plaintiffs to be recessed until after the filing of such accounting. Time for defendant's furnishing of such report was extended by the Court to August 1, 1958; and not having then been filed, plaintiffs renewed their application for receiver and removal of defendant as independent executor, alleging that they were being deprived of their legal rights and interest in the properties and revenues; with irreparable damage being sustained by them "so long as defendant James D. O'Connor is permitted to remain in control and possession * * *".

On August 13, defendant filed in said cause the following report: "Now comes James D. O'Connor, acting independent executor of the estate of Ellen and T. J. O'Connor and in answer to the order heretofore entered by the Court in this cause whereby said executor was required to make an accounting under oath as to what moneys received and paid out or expended by him since qualifying as executor, hereby makes this as his report in this respect;— moneys received, $18,300.77 and moneys paid out, $17,559.85; various items of furniture, furnishing and tools; two rings; and five pieces of costume jewelry. Real estate mentioned by plaintiff. This report is made under protest and is made without waiving the plea heretofore filed by this defendant with respect to the jurisdiction of this court in this respect and still insisting upon same."

At a further hearing on above date, the Court ruled that defendant's report was not in compliance with his previous order, in-

structing defendant to have all books and records relative to his handling of estate available for examination by plaintiffs' counsel on August 15th; in which connection the following colloquy occurred:

"The Court: Do I understand, Mr. O'Connor, that in view of your feelings, you refuse to produce the books and records of account and to comply with the order of the Court under date of August 13th, 1958?

"Mr. O'Connor: Well I feel that the Court hasn't got jurisdiction to require me to do it.

"The Court: I asked you * * * do you refuse to produce the records, Mr. O'Connor?

"Mr. O'Connor: Yes, I do at this time."

Upon extensive findings, Judge Long then appointed Robert P. Woodruff as receiver of properties described in the petition of plaintiffs (excluding the homeplace, 4603 Bryan Street), fixing a bond of $1,000, and also ordering removal of defendant as independent executor of the named estate.

It is well settled that courts of equity exercise jurisdiction in matters of accounting; especially so, of a person standing in the relationship of a fiduciary of trustee. It is the province of a district court and not the probate court to call an independent executor to account. Gonzalez v. Gonzalez, Tex.Civ.App., 309 S.W.2d 111; Toplitsky v. Toplitsky, Tex.Civ.App., 282 S.W.2d 254; Leach v. Leach, Tex.Civ. App., 208 S.W.2d 618. Jerrard v. McKenzie, 61 Tex. 40; Quintana v. Giraud, Tex. Civ.App., 209 S.W. 770, 772. "The provisions of the Constitution confer upon the district court equity jurisdiction in as broad terms as is conferred probate jurisdiction on the county court. When it appears by the pleadings and the proof that the suit involves controversies and issues between the parties for which the probate jurisdiction of the county court is inade-

quate to grant the relief sought, then the district court has jurisdiction, and may grant the necessary relief. Gregory v. Ward, 118 Tex. 526, 18 S.W.(2d) 1049; Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563; 109 Tex. 69, 196 S.W. 501." Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, 985. See also Stanley v. Henderson, 139 Tex. 160, 162 S.W.2d 95. This Griggs appeal involved the construction of a will; the Supreme Court going on to say that the district court having properly assumed jurisdiction" * * * and adjudicate the issues raised by the pleadings and the evidence, had the power to appoint a receiver for the preservation of the property involved. This power was inherent in the court, and was incident to the exercise of its jurisdiction until the case was finally determined. R.S., Art. 2293; Lauraine v. Ashe, Supra; Richardson v. McCloskey (Tex.Civ.App.) 228 S.W. 323; 53 C.J. p. 42, § 29 * * * *". It was also there pointed out that "[T]he probate court had no jurisdiction of the controversies between the independent executor and the devisees under the will". No cases are cited under appellant's numerous points to the contrary of the foregoing rules. And in view of defendant's refusal to render the full and complete accounting to which plaintiffs were presently entitled, the judicial alternative was manifestly an order of receivership, placing the property in custodia legis for purpose of the relief sought.

But appellant points to (1) the established rule that an independent executor has full discretion as to the time when the estate in his hands shall be finally distributed; (2) that in this type of administration a court may not compel any distribution or partition if debts are unpaid; the will contest of itself demonstrating the estate to be still in process of administration; Redditt v. Quinn, Tex.Civ.App., 215 S.W.2d 367 being chiefly relied on in support; and (3) that Sections 149, 214, 216 and 217 of the Probate Code, V.A.T.S., provides the exclusive method for removal of an independent executor on the grounds of

mis-management and dissipation of estate. Under these Articles the aggrieved party must complain to the Probate Court, seeking to place the executor under bond on charges of waste, mis-management, etc; and in case of a failure on part of the executor to do so in a given time, the executor may be removed.

■ Answering these points generally, Redditt's appeal involved no accounting such as is called for in the suit at bar, but one in connection with an action seeking to adjudge the estate as fully administered, which action the court held to be premature. Neither is the will contest of any particular significance, (though it should have been long since disposed of) relating only to "the homeplace" left to appellant; the property covered by this receivership being jointly owned by all three sons, either under the will or as heirs at law.

In this connection, plaintiffs might well have invoked the provisions of Article 2293, Vernon's Ann.Civ.St. (Receivership) as an action between partners or others jointly interested in any property or fund, "where it is shown that the property or fund is in danger of being lost, removed or materially injured." Richardson v. Mc-Closkey, Tex.Civ.App., 228 S.W. 323, 327; Quintana v. Giraud, Tex.Civ.App., 209 S.W. 770; Cocke v. Naumann, Tex.Civ. App., 188 S.W.2d 781.

It was the further order of Court "that J. D. O'Connor be and he is hereby removed as independent executor of the estates of T. J. and Ellen H. O'Connor", which order is assailed as being beyond the power of a District Court in an original proceeding to make; citing Probate Code, Sections 149, 214, 215, 216, 217.[1] Earlier Supreme Court decisions appear to hold that the Statute below quoted provides the exclusive procedure for removal of an independent executor for "mismanagement of the property", etc, such as Jerrard v. McKenzie, 61 Tex. 40; Perkins v. Wood, 63 Tex. 396; see also Hocker v. Stevens, Tex.Civ.App., 42 S.W.2d 473; Huth v. Huth, Tex.Civ.App., 110 S.W.2d 1011; King v. King, Tex.Civ.App., 230 S.W.2d 335. On the other hand, Freeman v. Banks, Tex.Civ.App., 91 S.W.2d 1078, 1080, (writ refused) in dictum affirms original jurisdiction of the District Court "in a proceeding had for that purpose." However, we find it unnecessary to reconcile the conflict, if any. The order of receivership affords adequate relief insofar as concerns the present issue of accounting and conservation of the property; resulting in a substitution of receiver for defendant executor and entire suspension of the latter's control over the property described in the order "until further orders of this Court." Furthermore said judgment recites in part: "And the said Robert P. Woodruff as receiver is authorized and empowered to *take posses-*

1. Vernon's Texas Probate Code, beginning with Section 145 is headed "Part 4, *Independent Administration*". Section 146 headed "Applicability of this Code to Independent Executors", provides: "Independent executors shall observe all provisions of this Code relative to priority, classification, and pro-rata payment of creditors' claims. The provisions of this Code shall not apply to independent executors except where specifically made applicable thereto."

To appellant's point 4, therefore, the provisions of Section 149, headed "Requiring Independent Executor to Give Bond" has particular relevance in connection with Sections 214–217. It reads: "When it has been provided by will, regularly probated, that an independent ex-

ecutor appointed by such will shall not be required to give bond for the management of the estate devised by such will, the direction shall be observed, unless it be made to appear at any time that such independent executor is mismanaging the property, or has betrayed or is about to betray his trust, or has in some other way become disqualified, in which case, upon proper proceedings had for that purpose, as in the case of executors or administrators acting under orders of the court, such executor may be required to give bond." This Article in substantially similar form has been a part of the statutory law of Texas even before the year 1879. 33 Texas Law Review, page 95.

*sion and control of said properties,* and to manage and control the same and receive and collect all rents and make all necessary disbursements out of said funds as may be necessary in renting and *preserving said property and duly accounting for same to the Court,* and with such other and further powers as the Court may from time to time deem necessary and proper." (Emphasis ours.) The further order removing defendant as independent executor is therefore viewed as duplicative and unnecessary.

 Appellant initially complained of the Court's error "in not requiring appellees, as a condition precedent to the appointment of a receiver, to give bond payable to appellant as required by Rule 695–a Texas Rules of Civil Procedure." It is there provided: "No receiver shall be appointed with authority to take charge of property until the party applying therefor has filed with the clerk of the court a good and sufficient bond, to be approved by such clerk, payable to the defendant in the amount fixed by the court, conditioned for the payment of all damages and cost in such suit, in case it should be decided that such receiver was wrongfully appointed to take charge of such property. The amount of such bond shall be fixed at a sum sufficient to cover all such probable damages and costs." Noncompliance with Rule 695–a is conceded; appellees arguing that the omission can be cured merely by either requiring a bond at this juncture or by a modification of the judgment. They say that "in view of the filing of a supersedeas bond by appellant, no action has been taken by the Receiver other than the filing of his oath and bond and no loss or damage has been incurred by appellant, and we submit that it would be fruitless and expensive procedure to reverse this case and remand it for another hearing for the correction of this oversight." Nevertheless, the point must be sustained; the pre-requisite of such bond to be fixed by the trial court constituting an element essential to the appointment of any receiver. Bell v. Bell, Tex.Civ.App., 204 S.W.2d 527. The

error just under discussion requires a reversal of the order appealed from. All other points of error (excepting point 4, removal of appellant as executor) are overruled.

Reversed and remanded to the trial court.